No. 10-1453

---

# United States Court of Appeals

## for the Sixth Circuit

---

## CLIFTON E. JACKSON and CHRISTOPHER M. SCHARNITZKE,

*Plaintiffs-Appellants*,

- vs. -

## SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., COCA COLA ENTERPRISES, INC., and DR. PAUL DROUILLARD,

*Defendants-Appellees*.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

---

## BRIEF OF *AMICI CURIAE* THE AMERICAN INSURANCE ASSOCIATION, NATIONAL COUNCIL OF SELF-INSURERS, AND CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA IN SUPPORT OF DEFENDANTS-APPELLEES AND AFFIRMANCE OF THE DECISION BELOW

---

MARK F. HORNING
JEFFREY M. THEODORE
STEPTOE & JOHNSON LLP
1330 CONNECTICUT AVENUE, N.W.
WASHINGTON, D.C. 20036
(202) 429-3000

*Attorneys for Amici Curiae*

Bruce C. Wood
American Insurance Association
2101 L Street N.W.
Washington, D.C. 20037

*Attorney forAmicus Curiae the
American Insurance Association*

Robin S. Conrad
Shane B. Kawka
National Chamber Litigation
   Center, Inc.
1615 H Street, N.W.
Washington, D.C. 20062
(202) 463-5537

*Attorneys for Amicus Curiae Chamber
of Commerce of the United States of
America*

Case: 10-1453   Document: 006110760514   Filed: 09/20/2010   Page: 3

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: __10-1453__          Case Name: __Jackson v. Sedgwick Claims Mgmt__

Name of counsel: __Mark F. Horning__

Pursuant to 6th Cir. R. 26.1, __American Insurance Association__
                                                    *Name of Party*

makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

| No |
|----|
|    |

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

| No |
|----|
|    |

---

**CERTIFICATE OF SERVICE**

I certify that on _____ September 20, 2010 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Mark F. Horning
_____
_____

---

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08                                                                                                    Page 1 of 2

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 10-1453            Case Name: Jackson v. Sedgwick Claims Mgmt

Name of counsel: Mark F. Horning

Pursuant to 6th Cir. R. 26.1, National Council of Self Insurers
*Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No

## CERTIFICATE OF SERVICE

I certify that on _____ September 20, 2010 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Mark F. Horning

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

Case: 10-1453   Document: 006110760514   Filed: 09/20/2010   Page: 5

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 10-1453          Case Name: Jackson v. Sedgwick Claims Mgmt

Name of counsel: Mark F. Horning

Pursuant to 6th Cir. R. 26.1, Chamber of Commerce of the United States of America
<em>Name of Party</em>
makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No

## CERTIFICATE OF SERVICE

I certify that on _____ September 20, 2010 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Mark F. Horning

_____

_____

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

Page 1 of 2

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

INTEREST OF THE *AMICI*...................................................................................3

DESCRIPTION OF WORKERS' COMPENSATION LAWS..............................5

ARGUMENT .......................................................................................................10

I. THE BUREAU'S EXCLUSIVE JURISDICTION BARS
   PLAINTIFFS' RICO CLAIMS ...................................................................10

    A. Plaintiffs' Dispute with Defendants Is a Claims-Handling
   Controversy that Falls within the Bureau's Exclusive
   Jurisdiction ...........................................................................................10

    B. Federal Case Law Supports Application of the Exclusive
   Jurisdiction Doctrine Here ...................................................................13

    C. Allowing RICO to Override the Bureau's Exclusive Jurisdiction
   Would Undermine Michigan's System for Workers'
   Compensation .......................................................................................15

    D. Plaintiffs Fail to Demonstrate Why the Exclusive Remedy
   Clause Does Not Apply.........................................................................19

II. FEDERAL COURTS SHOULD ABSTAIN FROM DECIDING
   CLAIMS THAT FALL WITHIN THE PURVIEW OF THE WDCA .........22

III. THE PRIMARY JURISDICTION DOCTRINE BARS PLAINTIFFS
   FROM PROSECUTING THIS ACTION ...................................................26

IV. PLAINTIFFS' RICO CLAIMS ARE NOT RIPE UNTIL THE
   BUREAU DECIDES THEIR ELIGIBILITY FOR BENEFITS...................29

CONCLUSION ....................................................................................................30

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Adams v. Nat'l Bank of Detroit*,
  508 N.W.2d 464 (Mich. 1993)..................................................................................7

*Adkins v. Mireles*,
  526 F.3d 531 (9th Cir. 2008) ................................................................................13

*Adrian Energy Assocs. v. Michigan Pub. Serv. Comm'n*,
  481 F.3d 414 (6th Cir. 2007) ...............................................................................22

*AmSouth Bank v. Dale*,
  386 F.3d 763 (6th Cir. 2004) ...............................................................................23

*Balcer v. Leonard Refineries, Inc.*,
  122 N.W.2d 805 (Mich. 1963)........................................................................15, 17

*Bray v. Utica Mutual Ins. Co.*,
  No. 3:98-CV-0544, 1998 U.S. Dist. LEXIS 13799 (N.D. Tex. Aug. 26,
  1998) .....................................................................................................................27

*Brennan v. Chestnut*,
  973 F.2d 644 (8th Cir. 1992) ................................................................................13

*Brown v. Cassens Transport Co.*,
  546 F.3d 347 (6th Cir. 2008) ..........................................................................21, 22

*Burford v. Sun Oil Co.*,
  319 U.S. 315 (1943)......................................................................................passim

*Clark v. Rea*,
  No. Civ. S-05-2410, 2005 WL 3453705 (E.D. Cal. Dec. 16, 2005) ..................23

*Connolly v. Maryland Cas. Co.*,
  849 F.2d 525 (11th Cir. 1988) ........................................................................14, 15

*Couture v. General Motors Corp.*,
  335 N.W.2d 668 (Mich. Ct. App. 1983)..........................................................20, 21

*Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*,
  941 F. 2d 1220 (D.C. Cir. 1991)..........................................................................13

*Dixon v. Sype*,
284 N.W.2d 514 (Mich. Ct. App. 1979).................................................................8

*Dykhouse v. Corporate Risk Mgmt. Corp.*,
961 F.2d 1576 (6th Cir. 1992) ...........................................................................23

*Ellis v. Gallatin Steel Co.*,
390 F.3d 461 (6th Cir. 2004) .............................................................................22

*Fellers v. Atl. Mut. Ins. Co.*,
No. 3:01-CV-1546-G, 2001 U.S. Dist. LEXIS 20112 (N.D. Tex. Dec. 4,
2001) ....................................................................................................................28

*Fry v. Airline Pilots Ass'n, Int'l*,
88 F.3d 831 (10th Cir. 1996) .............................................................................13

*Fuchs v. General Motors Corp.*,
325 N.W. 2d 489 (Mich. Ct. App. 1982)...........................................................19

*Golden v. Employers Ins. of Wausau*,
981 F. Supp. 467 (S.D. Tex. 1997).....................................................................27

*Gyadu v. Workers' Comp. Comm'n*,
930 F. Supp. 738 (D. Conn. 1996)......................................................................23

*H.J., Inc. v. Nw. Bell Tel. Co.*,
954 F.2d 485 (8th Cir. 1992) .............................................................................14

*Hamilton v. Sanofi-Aventis U.S., Inc.*,
628 F. Supp. 2d 59 (D.D.C. 2009)......................................................................27

*Harris v. Vernier*,
617 N.W.2d 764 (Mich. Ct. App. 2000).............................................................11

*Hebert v. Ford Motor Co.*,
281 N.W. 374 (Mich. 1938)..................................................................................7

*Hesse v. Ashland Oil, Inc.*,
642 N.W.2d 330 (Mich. 2002)......................................................................passim

*Hogg's v. New Jersey*,
352 F. App'x 625 (3d Cir. 2009) ........................................................................30

*Hubbard v. United Airlines, Inc.*,
  927 F.2d 1094 (9th Cir. 1991) .......................................................................13

*Illinois Bell Tel. Co. v. Global NAPs Illinois, Inc.*,
  551 F.3d 587 (7th Cir. 2008) ........................................................................26

*In re Long Distance Telecomms. Litig.*,
  831 F.2d 627 (6th Cir. 1987) ........................................................................26

*Indus. Commc'n Sys., Inc. v. Pac. Tel. & Tel. Co.*,
  505 F.2d 152 (9th Cir. 1974) ........................................................................26

*Liberty Mut. Ins. Co. v. Hurlbut*,
  585 F.3d 639 (2d Cir. 2009) ...........................................................23, 24, 26

*Lisecki v. Taco Bell Rests., Inc.*,
  389 N.W.2d 173 (Mich. Ct. App. 1986) ..........................................................8

*MCI Telecomms. Corp. v. Teleconcepts, Inc.*,
  71 F.3d 1086 (3d Cir. 1995) .........................................................................27

*Moon v. Harrison Piping Supply*,
  375 F. Supp. 2d 577 (E.D. Mich. 2005), *aff'd in part and rev'd in part on
  other grounds*, 465 F.3d 719 (6th Cir. 2006)................................................passim

*Moran v. Nafi Corp.*,
  122 N.W.2d 800 (Mich. 1963)........................................................................11

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*,
  538 U.S. 803 (2003)......................................................................................29

*Nationwide Mut. Ins. Co. v. Cisneros*,
  52 F.3d 1351 (6th Cir. 1995) ........................................................................29

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
  491 U.S. 350 (1989)......................................................................................22

*Northwinds Abatement, Inc. v. Employers Ins. of Wausau*,
  69 F.3d 1304 (5th Cir. 1995) ...................................................................27, 28

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
  523 U.S. 726 (1998)......................................................................................29

*Reedy v. White Consol. Indus.*,
  503 N.W.2d 601 (Iowa 1993) ................................................................27

*Rogers v. Morales*,
  975 F. Supp. 856 (N.D. Tex. 1997) ......................................................23

*Slayton v. Michigan Host, Inc.*,
  332 N.W.2d 498 (Mich. Ct. App. 1983) ...............................................11

*St. Paul Fire & Marine Ins. Co. v. Littky*,
  230 N.W.2d 440 (Mich. Ct. App. 1975) ..................................................8

*Sun City Taxpayers' Ass'n v. Citizens Utils. Co.*,
  45 F.3d 58 (2d Cir. 1995) .....................................................................14

*Sweeney v. Doe*,
  No. CV-88-2074, 1988 U.S. Dist. LEXIS 13296 (E.D.N.Y. Nov. 1, 1988) ......23

*Taffet v. Southern Co.*,
  967 F.2d 1483 (11th Cir. 1992) (en banc) ............................................14

*Tamburello v. Comm-Tract Corp.*,
  67 F.3d 973 (1st Cir. 1995) ..................................................................13

*Texas Commercial Energy v. TXU Energy, Inc.*,
  413 F.3d 503 (5th Cir. 2005) ...............................................................14

*United States v. Haun,*
  124 F.3d 745 (6th Cir. 1997) ...............................................................26

*United States v. Western Pac. R.R. Co.*,
  352 U.S. 59 (1956) ...........................................................................26, 29

*Wah Chang v. Duke Energy Trading & Mktg., LLC*,
  507 F.3d 1222 (9th Cir. 2007) .............................................................14

*Walsh v. Donovan*,
  575 F. Supp. 303 (S.D.N.Y. 1983) .......................................................29

*Warner v. Collavino Bros.*,
  347 N.W.2d 787 (Mich. Ct. App. 1984) ...........................................20, 21

*Wegoland Ltd. v. NYNEX Corp.*,
 27 F.3d 17 (2d Cir. 1994) ....................................................................................14

*Wells v. Firestone Tire & Rubber Co.*,
 364 N.W.2d 670 (Mich. 1984)...............................................................................7

*Yampey v. Glazer Foods Co.*,
 No. H-05-4348, 2006 U.S. Dist. LEXIS 67939 (S.D. Tex. Sept. 21, 2006) ......27

**STATUTES**

MCL § 418.131(1) ............................................................................................6, 10

MCL § 418.301 ...........................................................................................11, 16, 18

MCL § 418.301(5) ...............................................................................................12

MCL § 418.315(1) .................................................................................................9

MCL § 418.351 ....................................................................................................18

MCL § 418.361 ....................................................................................................18

MCL § 418.371 ....................................................................................................12

MCL § 418.385 ....................................................................................................12

MCL § 418.611(5) .................................................................................................9

MCL § 418.631 .....................................................................................................9

MCL § 418.631(1) ...............................................................................................18

MCL § 418.801(1) ...............................................................................................18

MCL § 418.801(2) .................................................................................................9

MCL § 418.841(1) .........................................................................................passim

MCL § 418.847 .....................................................................................................8

MCL § 418.851 ....................................................................................................12

Case: 10-1453   Document: 006110760514   Filed: 09/20/2010   Page: 12

MCL § 418.859a ....................................................................................8, 24

MCL § 418.861 .....................................................................................8, 24

MCL § 418.861a ........................................................................................24

MCL § 418.861a(14)..............................................................................8, 9, 19

MCL § 418.861b(a)......................................................................................9

42 U.S.C. § 1985 .......................................................................................14

**BOOKS AND ARTICLES**

6 Lex K. Larson, *Larson's Workers' Compensation* § 100.01[1] (2010) .................5

*Amici curiae* the American Insurance Association, National Council of Self-Insurers, and the Chamber of Commerce of the United States of America respectfully submit this brief in support of the Defendants-Appellees and urging affirmance of the district court's judgment.

## INTRODUCTION

Plaintiffs are employees who seek workers' compensation benefits for alleged workplace injuries but who are dissatisfied with Michigan's administrative process for adjudicating disputes over eligibility for such awards.  They attempt to circumvent that administrative process by bringing Racketeer Influenced and Corrupt Organizations Act ("RICO") claims to assert their entitlement to the very same benefits at issue in pending administrative proceedings.  As the District Court recognized, this misuse of the RICO statute would undermine Michigan's regime for regulating workers' compensation awards by usurping the role of state regulators, increasing costs, and eroding the ability of employers and insurers to effectively manage disability – which is the main goal of the workers' compensation system.

Workers' compensation laws reflect an implicit bargain between employers and employees that guarantees compensation to injured workers while limiting the cost to employers.  Employees obtain benefits under a "no fault" standard that relieves them of the need to prove their employer's negligence or other type of

wrongdoing. They obtain fair compensation based on statutory schedules of payments for lost wages and medical treatment but cannot recover non-economic or punitive damages. Employers obtain certainty regarding the amount for which they will be liable and relief from the possibility of mammoth jury awards. Both parties benefit from a streamlined administrative process that minimizes the transactional costs of litigation.

The workers' compensation law enforces this bargain through exclusive jurisdiction and exclusive remedy provisions that require claims to be heard in the administrative process and bar employee damages suits in other fora. This statutory regime would be compromised if compensation for workplace injuries is allowed to become the subject of RICO litigation. Claimants could make an "end run" around the administrative proceedings merely by alleging fraud and instituting costly, protracted litigation for treble damages based on federal rather than state standards of liability. This would destabilize an efficient system of compensation that has stood for decades and federalize a traditional area of state authority.

Moreover, RICO simply does not apply to Plaintiffs' claims. The alleged predicate acts in this case are violations of duties imposed by a state workers' compensation statute. Thus, they all occur as a result of state law and in the context of a detailed state scheme of administrative regulation. Because Michigan,

- 2 -

like other states, has held that wrongful conduct in the handling of workers' compensation claims is committed to the exclusive jurisdiction of state regulators and is subject to an exclusive remedy and an exclusive set of penalties that do not permit recovery or sanctions under other statutes, allegations of misconduct in this area are not actionable under RICO.

Alternatively, this Court should affirm the decision below because the *Burford* abstention and primary jurisdiction doctrines mandate deference to complex state schemes of regulation and expert administrative agencies. Indeed, plaintiffs' RICO claims are unripe for decision because the Michigan administrative agency has not yet determined whether plaintiffs are eligible for compensation, which is a prerequisite for their claims.

## INTEREST OF THE *AMICI*

*Amicus curiae* the American Insurance Association ("AIA") is a leading national trade association representing some 350 major property and casualty insurance companies that write a major share of property and casualty insurance, including workers' compensation insurance, throughout the United States and in Michigan. In 2009, AIA members collectively underwrote more than $97.4 billion in direct, nationwide property and casualty premiums, including nearly $178 million in Michigan workers' compensation premium – 21.1 percent of the total workers' compensation insurance market in this State. On issues of importance to

the property and casualty insurance industry and marketplace, AIA advocates

sound and progressive public policies on behalf of its members in legislative and

regulatory forums at the federal and state levels and files *amicus curiae* briefs in

significant cases before federal and state courts.  AIA members have a strong

interest in the stability of the Michigan workers' compensation system and,

therefore, in one of the principal issues presented in this case:  whether the

exclusive remedy and exclusive jurisdiction provisions of state workers'

compensation laws protect them against treble damage actions under RICO that

challenge their handling of injured workers' claims for benefits subject to a

comprehensive administrative scheme of regulation and adjudication.

The National Council of Self-Insurers ("National Council") is a national

association of employers that elect to self-insure their obligation to pay worker's

compensation benefits rather than purchase insurance.  Self-insurers have the same

interest as insurers in the integrity of the exclusive remedy and exclusive

jurisdiction provisions in state workers' compensation laws, which protect them

against claims for compensatory or punitive damages outside the workers'

compensation system.

The Chamber of Commerce of the United States of America ("Chamber") is

the world's largest business federation.  It represents 300,000 direct members and

indirectly represents an underlying membership of three million professional

- 4 -

organizations of every size, in every industry sector, and from every region of the country.  A central function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts.  To that end, the Chamber regularly files *amicus* briefs in cases that raise issues of vital concern to the nation's business community.  The Chamber's members have the same substantial interest in the outcome of this litigation as do the members of the AIA and the National Council.

## DESCRIPTION OF WORKERS' COMPENSATION LAWS

The heart of state workers' compensation laws is the "compensation bargain" between employees and their employers.  Employees get quick and certain compensation for on-the-job injuries under a "no fault" standard that does not require them to prove that their employer was negligent or otherwise at fault.  They receive compensation for lost earnings, typically according to statutory schedules based on wages, and for the costs of medical treatment and rehabilitation.  In return, "the employer . . . is relieved of the prospect of large damage verdicts."  6 Lex K. Larson, *Larson's Workers' Compensation* § 100.01[1] (2010).

Together, the presumption of liability and the statutory benefits schedules reduce the scope and stakes of litigation.  That permits cheaper, more efficient handling of cases and generates large cost savings compared to traditional tort

litigation.  Employers and employees need not litigate every case with intensive

discovery and complex theories of liability focused on the largest possible verdict.

In addition, the workers' compensation system ensures that compensation is evenly

distributed among injured workers, rather than concentrated in the hands of a few

lucky recipients of out-sized damage awards.

> As the Michigan Supreme Court has put it:
>
> This concept emerged from a balancing of the sacrifices and gains of both employees and employers, in which the former relinquished whatever rights they had at common law in exchange for a sure recovery under the compensation statutes, while the employers on their part, in accepting a definite and exclusive liability, assumed an added cost of operation which in time could be actuarially measured and accurately predicted; incident to this both parties realized a saving in the form of reduced hazards and costs of litigation.

*Hesse v. Ashland Oil, Inc.*, 642 N.W.2d 330, 334 (Mich. 2002) (citations and

quotation marks omitted).

The exclusive remedy and exclusive jurisdiction provisions of workers'

compensation laws preserve the system's efficiencies and the balance between the

interests of employees and employers.  The exclusive remedy provision in

Michigan's Workers' Disability Compensation Act ("WDCA") states that:  "The

right to the recovery of benefits as provided in this act shall be the employee's

exclusive remedy against the employer for a personal injury or occupational

disease."  MCL § 418.131(1).  With the exception of injuries intentionally inflicted

by the employer, the exclusive remedy provision prevents employees' recovering

- 6 -

damages from employers for workplace accidents under other theories, whether

based on common law or statute.  *See, e.g., Wells v. Firestone Tire & Rubber Co.*,

364 N.W.2d 670 (Mich. 1984) (WDCA bars product liability claims against

employers); *Adams v. Nat'l Bank of Detroit*, 508 N.W.2d 464 (Mich. 1993)

(WDCA bars claims for gross negligence or recklessness).  In addition, the WDCA

bars claims by third parties for collateral injuries they suffered as a result of the

employee's workplace injury.  *See Hesse,* 642 N.W.2d at 332-35 (WDCA barred

parents' claims for tortious infliction of emotional distress stemming from

workplace death of their son).

The exclusive remedy is administered by a dedicated state agency, the

Michigan Bureau of Workers' Compensation ("Bureau"), which has exclusive

jurisdiction to adjudicate disputes regarding compensation.  *See* MCL § 418.841(1)

("Any dispute or controversy concerning compensation or other benefits shall be

submitted to the bureau and all questions arising under this act shall be determined

by the bureau or a workers' compensation magistrate, as applicable.").  The Bureau

is tasked with operating a streamlined administrative process that avoids the costs

and burdens of protracted judicial proceedings.  Proceedings "are administrative,

not judicial, – inquisitorial, not contentious, – disposed of not by litigation and

ultimate judgment, but summarily." *Hebert v. Ford Motor Co.*, 281 N.W. 374, 375

(Mich. 1938). That generates the cost savings that are a primary benefit of the workers' compensation regime.

Disputed claims for compensation not resolved by settlement or mediation go first to a workers' compensation magistrate, *see* MCL § 418.847, whose findings of fact are conclusive. *See* MCL § 418.861a(14). Magistrates' decisions are subject to a centralized system of review. Appeal is first to the Workers' Compensation Appellate Commission ("WCAC"), *see* MCL § 418.859a, and then to the Michigan Court of Appeals. *See* MCL § 418.861.

The Bureau's exclusive jurisdiction extends broadly – to "[a]ny dispute or controversy concerning compensation or other benefits." MCL § 418.841(1). As the Michigan Court of Appeals has explained, "the resolution of all disputes relating to workmen's compensation is vested exclusively in the Workmen's Compensation Bureau." *St. Paul Fire & Marine Ins. Co. v. Littky*, 230 N.W.2d 440, 442 (Mich. Ct. App. 1975); *see also Dixon v. Sype*, 284 N.W.2d 514, 516 (Mich. Ct. App. 1979) (Bureau's "[j]urisdiction is not limited to claims for compensation."). Thus, the Bureau is the exclusive forum in which to bring claims involving denial or termination of benefits. *See Lisecki v. Taco Bell Rests., Inc.*, 389 N.W.2d 173, 175 (Mich. Ct. App. 1986) ("allegation by the plaintiff that compensation benefits were wrongfully terminated by the defendants in order to further some ulterior motive of the defendants" was not addressable in court

because "[a]n adequate remedy for the defendants' termination of benefits was available to and exercised by plaintiff Donald Lisecki, i.e., his filing of a petition for hearing with the Bureau of Worker's Disability Compensation, which resulted in an open award of benefits").

In particular, Michigan's workers' compensation regime provides a remedy for fraud in claims handling. Allegations of fraud can be presented to the magistrate, reviewed by the WCAC, and appealed to the Michigan Court of Appeals. Fraud nullifies the presumption that the Bureau's findings of fact were correct. MCL § 418.861a(14).

In addition, the administrative scheme prescribes fines and other sanctions for employers or insurers that do not comply with their statutory claims-handling obligations. The Bureau can revoke an insurer's license or an employer's privilege to self insure. *See* MCL § 418.611(5); MCL § 418.631. It can levy statutory fines for failure to pay benefits within the prescribed deadlines, and the WDCA automatically assesses interest on any delayed payment of benefits. *See* MCL § 418.801(2). A claimant can recover attorney's fees upon proof that the employer failed to provide needed medical services. *See* MCL § 418.315(1). And the WCAC may assess costs or take other disciplinary action against employers who bring frivolous appeals "for purposes of hindrance or delay." MCL § 418.861b(a).

- 9 -

In sum, Michigan has constructed a workers' compensation scheme that responds internally to allegations of fraudulent or otherwise improper denial of benefits. The Bureau not only has the power but also the exclusive jurisdiction to provide redress for such conduct.

## ARGUMENT

### I.    THE BUREAU'S EXCLUSIVE JURISDICTION BARS PLAINTIFFS' RICO CLAIMS

#### A.    Plaintiffs' Dispute with Defendants Is a Claims-Handling Controversy that Falls within the Bureau's Exclusive Jurisdiction

Whether the WDCA's exclusive remedy and jurisdiction clauses prohibit RICO claims is, in the first instance, a matter of statutory interpretation. The WDCA's exclusive remedy provision makes clear that the prohibition on other relief is complete except to the extent the statute explicitly carves out other causes of action. "The *only* exception to this exclusive remedy is an intentional tort" where "an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury." MCL § 418.131(1) (emphasis added). Similarly, the exclusive jurisdiction clause submits "[a]ny dispute or controversy concerning compensation or other benefits" to the Bureau, without exception. MCL § 418.841(1).

Michigan courts therefore have rejected claims for compensation for workplace injuries that are not based on the WDCA – however they are styled. *See*

- 10 -

*Slayton v. Michigan Host, Inc.*, 332 N.W.2d 498, 500 (Mich. Ct. App. 1983) ("the applicability of the exclusive remedy provision of the act turns not upon the characterization of the asserted cause of action but upon whether the employee has a right to recover benefits under the act"); *Hesse*, 642 N.W.2d at 333-35; *Harris v. Vernier*, 617 N.W.2d 764 (Mich. Ct. App. 2000); *Moran v. Nafi Corp.*, 122 N.W.2d 800, 804 (Mich. 1963) ("we believe any broadening of the base of recovery against the employer as a result of an industrial injury to include an action at law by any other person must, if it is to be authorized, be authorized by legislative action").

The exclusive remedy and the Bureau's exclusive jurisdiction extend to Plaintiffs' claims. The gravamen of the Complaint is that Defendants fraudulently terminated or denied them workers' compensation benefits. The principal allegation is that Defendants retained physicians to conduct fraudulent "independent medical examinations" ("IMEs") that disqualified them from receiving benefits. *See* RE # 44-2, Pls.' Proposed 2d Am. Compl. ("SAC") ¶¶ 10-16 (pp. 5-8). Thus, this suit is plainly a "dispute or controversy concerning compensation or other benefits." MCL § 418.841(1).

In fact, IMEs are central to the determination of a worker's entitlement to compensation and, if so, the amount. Claimants are eligible for compensation only if the injury they suffered occurred in the workplace. *See* MCL § 418.301. The

amount and duration of compensation depends on the extent to which the injury

prevents the worker from performing his or her normal workplace duties. *See*

MCL § 418.371; MCL § 418.301(5). The WDCA therefore permits the employer

or insurer to obtain expert medical evidence bearing on these questions by

requiring the claimant to attend a physical examination by an independent

physician, rather than the one the claimant has selected for his or her treatment.

MCL § 418.385. As Plaintiffs acknowledge, the claimant's attorney has the right

to depose the physician performing the IME. *See* Brief of Plaintiffs-Appellants

("Br. Appellants") at 16. The IME report and that deposition testimony then

become evidence in adjudicatory proceedings before a magistrate, who considers

them and rules on their validity and weight when deciding whether to award

compensation. MCL § 418.851. In other words, Plaintiffs' central allegations –

regarding the validity of the IMEs – involve precisely the kind of determinations

committed to the exclusive jurisdiction and expertise of the Bureau's magistrates.

Plaintiffs also allege that defendants delayed making decisions on their

claims, denied the claims without medical evidence or for falsified reasons, and

terminated benefits after plaintiffs refused to settle for the amounts sought. *See*

RE # 44-2, SAC ¶¶ 12, 16, 27 (pp. 5-6, 8, 15). The exclusive jurisdiction of the

Bureau's magistrates also extends to allegations of this kind and, indeed, more

- 12 -

broadly to *any* allegation of improper claims handling by the employer or insurer. *See* discussion above at 8-10; below at 19-21.

### B. Federal Case Law Supports Application of the Exclusive Jurisdiction Doctrine Here

Federal courts have refused to permit the use of RICO to litigate disputes that are entrusted to the exclusive jurisdiction of a regulatory agency. For example, the Ninth Circuit has held that plaintiffs may not use "artful pleading" to bring a RICO claim for fraudulent denial of disability benefits afforded by the Railway Labor Act, which has an exclusive remedy clause similar to those in state workers' compensation laws. *Hubbard v. United Airlines, Inc.*, 927 F.2d 1094, 1098 (9th Cir. 1991); *see also Fry v. Airline Pilots Ass'n, Int'l*, 88 F.3d 831, 835-39 (10th Cir. 1996). Other Courts of Appeals similarly have refused to countenance RICO suits that would interfere with exclusive remedy provisions. *See, e.g., Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F. 2d 1220, 1226-29 (D.C. Cir. 1991) (no RICO action could be maintained where conduct was wrongful under the Service Contract Act, which includes an exclusive statutory scheme for relief); *Adkins v. Mireles*, 526 F.3d 531, 542 (9th Cir. 2008) (RICO not available to challenge misconduct within the exclusive jurisdiction of the NLRB); *Tamburello v. Comm-Tract Corp.*, 67 F.3d 973, 976-79 (1st Cir. 1995) (same); *Brennan v. Chestnut*, 973 F.2d 644, 647 (8th Cir. 1992) (same).

The exclusive jurisdiction doctrine applies notwithstanding that the WDCA is a state statute and the Bureau is a state agency.  At least five federal circuit courts have held that RICO cannot be used to litigate matters within the exclusive jurisdiction of state regulatory agencies.  *See H.J., Inc. v. Nw. Bell Tel. Co.*, 954 F.2d 485, 494 (8th Cir. 1992); *Taffet v. Southern Co.*, 967 F.2d 1483, 1490-95 (11th Cir. 1992) (en banc); *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18-22 (2d Cir. 1994); *Sun City Taxpayers' Ass'n v. Citizens Utils. Co.*, 45 F.3d 58, 62 (2d Cir. 1995); *Wah Chang v. Duke Energy Trading & Mktg., LLC*, 507 F.3d 1222, 1226 n.4 (9th Cir. 2007); *see also Texas Commercial Energy v. TXU Energy, Inc.*, 413 F.3d 503 (5th Cir. 2005).

More specifically, courts have recognized that the exclusive jurisdiction of state workers' compensation agencies bars resort to federal causes of action that would circumvent the exclusive remedy.  For example, the Eleventh Circuit has held that a district court could not consider civil rights claims under 42 U.S.C. § 1985 that depended on entitlement to benefits under Florida's workers' compensation law.  *See Connolly v. Maryland Cas. Co.*, 849 F.2d 525, 525, 528 (11th Cir. 1988).  As the court explained, "[t]he civil rights claims and constitutional claims are all based on the right provided by Florida Compensation Law.  Were it not for the alleged conduct required of defendant by Florida law, there would be no ground for asserting civil rights or constitutional claims because

- 14 -

of wrongful conduct.  The remedy for that wrongful conduct cannot rise above the exclusive remedy provided by the Florida statutes."  *Id*. at 528.

The same is true of RICO claims for improper denial of benefits.  Plaintiffs base their RICO claims on Defendants' alleged breach of compensation and claims handling obligations duties created by the WDCA.  *See* RE # 44-2, SAC ¶ 16 (p. 8).  However, the state law that creates those duties provides that violations are cognizable only within the exclusive jurisdiction of the Bureau.

### C. Allowing RICO to Override the Bureau's Exclusive Jurisdiction Would Undermine Michigan's System for Workers' Compensation

The Bureau's exclusive jurisdiction over any dispute relating to workers' compensation is an essential component of the statutory scheme.  As the Michigan Supreme Court explained long ago and recently reaffirmed, "[t]he history of the development of statutes, such as this, creating a compensable right independent of the employer's negligence and notwithstanding an employee's contributory negligence, recalls that the keystone was the exclusiveness of the remedy."  *Balcer v. Leonard Refineries, Inc*., 122 N.W.2d 805, 807 (Mich. 1963), *quoted in Hesse*, 642 N.W.2d at 334 (italics omitted).

By compromising the exclusivity provisions of Michigan's scheme, RICO suits such as Plaintiffs' would disrupt the administrative regime as a whole.  Application of RICO would permit claims for workers' compensation to evade

- 15 -

scrutiny by the agency with expertise on medical questions and substitute the less tutored views of a federal judge or jury. Further, RICO suits would allow intensive discovery not permitted under the WDCA. The end result would be a duplicative system of federal review of medical findings rife with the potential for inconsistent decisions.

Moreover, litigating compensation disputes under RICO would expand the available damages beyond those permitted by the WDCA. RICO damages are not limited to the compensation specified in the WDCA's schedules; they may include consequential damages exceeding lost wages and the cost of medical treatment. RICO also permits trebling of damages – essentially, a form of punitive damages. That is at odds with the WDCA, which does not provide punitive damages for workplace injuries. *See* MCL §§ 418.301 *et seq*. The objective of workers' compensation systems is not punishment or deterrence but compensation of injured workers for lost wages and provision of the reasonable and necessary medical treatment required for their recovery and return to work.

Between them, tort-style litigation and damages would create great uncertainty for employers and insurers, which it is a major purpose of the WDCA to avoid. No longer would employers be subject to "a definite and exclusive liability" that is an "actuarially measure[able] and accurately predict[able]" "cost

- 16 -

of operation" that allows them to "realize[] a saving" on the "costs of litigation." *Hesse*, 642 N.W.2d at 334 (quoting *Balcer*, 122 N.W.2d at 805).

That uncertainty would affect every stage of the claims handling process, particularly because RICO extends liability to those who have no financial responsibility under state law. The threat of liability will undermine the independence and objectivity of physicians conducting IMEs and will deter claims handlers from refusing compensation for fraudulent claims.

More generally, RICO suits will make every claims management decision the potential subject of treble damages litigation. A major goal of the workers' compensation system is to encourage workers to return to work, but the threat of RICO damages will infect every decision regarding management of disability – whether to determine the existence and extent of permanent or temporary impairment, the nature and intensity of medical treatment, the amount and duration of compensation, qualification for vocational rehabilitation, or the ability to return to work. The possibility of recovering treble damages may even deter workers from returning to work. And the threat of treble damages will cause employers and insurers to consult counsel at every stage of the claims-handling process out of fear of liability for any decision the claimant or his counsel deem improper. That will shift the focus of claims handling from managing disability to obtaining legal protection, impairing the system's rehabilitative goals while increasing its costs.

- 17 -

In addition, allowing injured workers to invoke RICO would subject disputes over compensation to a set of federal legal standards inconsistent with those in the WDCA. There is nothing analogous to the concept of an "enterprise" or a "pattern of racketeering activity" in the Michigan law. And the federal standards for proving "wire fraud" or "mail fraud" as "predicate acts" are quite different than the standards in the WDCA for proving fraud or other misconduct in the handling of claims. Conversely, RICO does not incorporate any of the standards for determining compensation under the WDCA, such as "workplace injury," the distinction between "permanent" and "temporary" disability, and the difference between "total" and "partial" disabilities. MCL §§ 418.301, 418.351, 418.361. Therefore, using RICO to litigate workers' compensation claims would create a double legal standard and destroy the uniformity of Michigan's system.

RICO suits such as this one undermine the WDCA by usurping the Bureau's administrative and enforcement functions. Here, for example, Plaintiffs seek injunctive relief against Defendants that would control their use of physicians, require that they keep various records, and order them to comply with the WDCA. RE # 44-2, SAC ¶ 34 (p. 33). Under Michigan law, however, enforcement of the WDCA is exclusively the function of the Bureau, subject to state court review. *See, e.g.*, MCL § 418.801(1) (requiring keeping of certain records and the furnishing of reports "to the bureau as the director may reasonably require"); MCL

- 18 -

§ 418.631(1) (allowing the Bureau to recommend revocation of a workers'
compensation insurer's license if it "fails to pay promptly claims for compensation
for which it shall become liable or if it repeatedly fails to make reports to the
director as provided in this act").  As the requested injunctive relief demonstrates,
RICO litigation would transform federal district courts into co-administrators of
the WDCA.  That would be an unprecedented federal intrusion into a traditional
area of state regulation.

**D.     Plaintiffs Fail to Demonstrate Why the Exclusive Remedy Clause
        Does Not Apply**

Plaintiffs argue that the Bureau does not have exclusive jurisdiction because:
(1) the WDCA does not address claims handling fraud – or if it does, any penalties
for fraud are too weak; and (2) the alleged fraud occurred long after the workplace
injuries.  *See* Br. Appellants at 34-41.  These arguments are not availing.

Plaintiffs are simply wrong to claim that the WDCA is inapplicable to fraud.
As described above, the WDCA imposes multiple penalties for fraud in claims
handling.  *See* above at 9.  In fact, the WDCA provides for enhanced judicial
review of administrative decisions that might have been tainted by fraud by
relaxing the rule that a magistrate's findings of fact are conclusive on appeal.  *See*
MCL § 418.861a(14).  Thus, the Michigan Court of Appeals can overturn the
Bureau's decision to deny compensation if there is proof of fraud.  *See, e.g., Fuchs*

- 19 -

*v. General Motors Corp.*, 325 N.W. 2d 489, 491 (Mich. Ct. App. 1982) ("We are charged with the responsibilities of reviewing questions of law [and] determining whether there is any fraud . . . .").

Nor does it matter that a denial of benefits occurs after a workplace injury. The WDCA's exclusive jurisdiction clause extends the Bureau's jurisdiction to "*[a]ny* dispute or controversy *concerning* compensation or other benefits." MCL § 418.841(1) (emphasis added). Indeed, because a claim for compensation can be made only if the worker has suffered a workplace injury, compensation for the injury and the handling of the resulting claim cannot be de-linked. As a result, resolution of a dispute over the handling of a claim not only "concerns" compensation but lies at the heart of the Bureau's exclusive jurisdiction to resolve disputes over eligibility. Thus, a dispute over post-injury denial of benefits is just the type of controversy that falls within the sole purview of the Bureau and, on appeal, the WCAC and the Michigan Court of Appeals. *See Warner v. Collavino Bros.*, 347 N.W.2d 787, 789 (Mich. Ct. App. 1984) (claim that benefits were denied in bad faith heard first by magistrate within Bureau, then by WCAC, and then by the Court of Appeals); *Couture v. General Motors Corp.*, 335 N.W.2d 668, 669-70 (Mich. Ct. App. 1983) (same).

Essentially, the plaintiffs in this case are attempting to create a "bad faith" exception to the Bureau's exclusive jurisdiction over disputes about compensation.

- 20 -

They contend that alleged fraud by an employer or insurer gives them a cause of action outside the WDCA.  The Michigan courts, however, have rejected this notion because nothing in the statute supports such an exception to the exclusive jurisdiction clause and because the WDCA itself contains remedies for bad faith claims handling and defines the type of conduct for which those penalties are appropriate.  *See Warner*, 347 N.W.2d 789-90 (improper to impose a penalty for disputing a claim in bad faith beyond those authorized by the WDCA); *Couture*, 335 N.W.2d at 670 (WDCA defines the sort of bad faith conduct for which penalties are appropriate).

Although plaintiffs may be dissatisfied with the severity of the penalties the WDCA imposes on fraudulent conduct, that does not justify invocation of RICO to override the Bureau's exclusive jurisdiction.  The penalty for fraud within Michigan's workers' compensation system is a public policy question that should be addressed to the Michigan legislature and not to the federal courts.

Finally, Plaintiffs' heavy reliance on *Brown v. Cassens Transport Co.*, 546 F.3d 347 (6th Cir. 2008), is misplaced.  That decision does not bear on the application of the exclusive jurisdiction doctrine to RICO.  The panel considered the application of the "reverse preemption" provisions of the McCarran-Ferguson Act, not the exclusive jurisdiction doctrine, which arises from an independent body of federal and state jurisprudence rather than that statute.  Nor did the *Cassens*

- 21 -

court consider the effect of the WDCA's exclusive remedy and exclusive jurisdiction provisions and their significance within the statutory scheme. Finally, the *Cassens* panel did not consider the substantial body of Michigan law holding that allegations of fraudulent denial of benefits are just as subject to the Bureau's exclusive jurisdiction as allegations based on inadvertence or mistake.

## II. FEDERAL COURTS SHOULD ABSTAIN FROM DECIDING CLAIMS THAT FALL WITHIN THE PURVIEW OF THE WDCA

The *Burford* abstention doctrine requires affirmance of the decision below. Under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), federal courts must decline to exercise jurisdiction in deference to centralized state administrative schemes of regulation. The doctrine applies where (1) there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar;" or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989) (citations and quotation marks omitted); *see also Adrian Energy Assocs. v. Michigan Pub. Serv. Comm'n*, 481 F.3d 414 (6th Cir. 2007); *Ellis v. Gallatin Steel Co.*, 390 F.3d 461 (6th Cir. 2004).

- 22 -

Suits challenging the policies and processes of state administrative schemes regulating workers' compensation are particularly good candidates for *Burford* abstention. *See Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 650-51 (2d Cir. 2009). Courts often invoke the doctrine in the face of federal complaints by employees who are dissatisfied with the disposition of their claims by the state workers' compensation agency and seek to circumvent its decision. *Moon v. Harrison Piping Supply*, 375 F. Supp. 2d 577, 589-90 (E.D. Mich. 2005), *aff'd in part and rev'd in part on other grounds*, 465 F.3d 719 (6th Cir. 2006); *Clark v. Rea*, No. Civ. S-05-2410, 2005 WL 3453705, at *1 (E.D. Cal. Dec. 16, 2005); *Rogers v. Morales*, 975 F. Supp. 856, 857 (N.D. Tex. 1997); *Gyadu v. Workers' Comp. Comm'n*, 930 F. Supp. 738, 744-45 (D. Conn. 1996); *Sweeney v. Doe*, No. CV-88-2074, 1988 U.S. Dist. LEXIS 13296, at *4-8 (E.D.N.Y. Nov. 1, 1988). More generally, *Burford* abstention is often appropriate in the insurance context because insurance typically is the subject of comprehensive state regulatory regimes, such as those governing workers' compensation insurance. *See, e.g., AmSouth Bank v. Dale*, 386 F.3d 763, 783 (6th Cir. 2004); *Dykhouse v. Corporate Risk Mgmt. Corp.*, 961 F.2d 1576 (6th Cir. 1992).

The present circumstances satisfy all of the criteria for *Burford* abstention. Like all workers' compensation systems, Michigan's embodies important state policies that are of significant public interest. *See Moon*, 375 F. Supp. 2d at 589

("[A]n employee's entitlement to workers' compensation benefits bears upon 'policy problems of a substantial public import' or 'matter[s] of substantial public concern.'") (citation omitted; second alteration in original).

Also like most such systems, Michigan's is governed by a highly-detailed and complex administrative scheme. *See Moon*, 375 F. Supp. 2d at 589 ("[Michigan's] administrative scheme is comprehensive, setting forth the nature and amount of the particular benefits to which it affords entitlement, the scope of any such entitlement, and the administrative and judicial processes for resolving any disputes regarding that entitlement."); *cf. Hurlbut*, 585 F.3d at 650 ("[New York's workers' compensation law] is a reticulated statute that governs a complex system designed to benefit the interests of employer and employee . . . . To that end, an elaborate system for the compensation of those injured in the course of employment has been established . . . .").

And Michigan has the kind of specialized and centralized process for review of administrative decisions that warrants *Burford* abstention. Review of magistrates' decisions in the first instance is by an expert administrative appeals board, the WCAC. *See* MCL §§ 418.859a, 418.861a. The Commission's decisions are then reviewable by a single appellate court, the Michigan Court of Appeals. *See* MCL § 418.861.

- 24 -

RICO litigation of claims handling would disrupt Michigan's use of this administrative machinery to implement a coherent policy regarding workers' compensation benefits. Deciding RICO claims of fraudulent denial of benefits requires litigation of a plaintiff's entitlement to those benefits. Thus, a federal jury verdict in this case may well conflict with the decision of the magistrates presiding in the Plaintiffs' ongoing administrative proceedings. As the court in *Moon* recognized, the "frequent resolution, in a federal forum, of a plaintiff's entitlement to workers' compensation benefits . . . would likely undermine the uniformity and coherence in such determinations that Michigan seeks to achieve . . . ." *See* 375 F. Supp. 2d at 589.

This fragmentation of decision-making is exactly what justified abstention in *Burford* itself. There, the Texas Railroad Commission was tasked with ensuring the efficient exploitation of the East Texas oil field, an undertaking which required both a set of rules and a patchwork of individual orders that had to be rendered in harmony. *See Burford*, 319 U.S. at 319-25. Abstention was appropriate lest federal consideration of the same issues that were before the Texas Commission lead to "intolerable confusion" in which "different courts of equal dignity might reach different and conflicting conclusions." *Id*. at 327 (citation and quotation marks omitted). The result in the workers' compensation context would be no different.

- 25 -

Ultimately, allowing treble-damage RICO claims for improper denial of benefits will upset the "historic balance of interests" between employers and employees "that has been the hallmark of the policy underlying" workers' compensation laws. *Hurlbut*, 585 F.3d at 651. And it will thwart Michigan's policy of awarding compensation to injured workers on a no fault basis.

## III. THE PRIMARY JURISDICTION DOCTRINE BARS PLAINTIFFS FROM PROSECUTING THIS ACTION

The primary jurisdiction doctrine is a policy of deference to specialized administrative expertise. "The doctrine of primary jurisdiction arises when a claim is properly cognizable in court but contains some issue within the special competence of an administrative agency. When the doctrine is applicable, court proceedings are stayed so as to give the parties reasonable opportunity to 'refer' the matter to an agency by seeking an administrative ruling." *United States v. Haun,* 124 F.3d 745, 749 (6th Cir. 1997); *see also United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1956); *In re Long Distance Telecomms. Litig.,* 831 F.2d 627, 629-30 (6th Cir. 1987).

The doctrine applies notwithstanding that a state, rather than federal, administrative agency has expertise on the legal or factual issues in the federal dispute. *See Illinois Bell Tel. Co. v. Global NAPs Illinois, Inc.*, 551 F.3d 587, 594-95 (7th Cir. 2008); *Indus. Commc'n Sys., Inc. v. Pac. Tel. & Tel. Co.*, 505 F.2d 152

(9th Cir. 1974); *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086 (3d Cir. 1995). Thus, federal courts have invoked the primary jurisdiction doctrine to defer to state workers' compensation regulators who have expertise over the compensation-related aspects of the federal claims. *See Northwinds Abatement, Inc. v. Employers Ins. of Wausau*, 69 F.3d 1304, 1311 (5th Cir. 1995).

Four additional considerations make deference to the Bureau's primary jurisdiction especially appropriate in this case. First, Plaintiffs' RICO claims rest entirely on their eligibility for state benefits, and Michigan law "commits the resolution of one's entitlement to workers' compensation benefits in the first instance to the special competence of the [Bureau]." *Moon*, 375 F. Supp. 2d at 586; *see also Golden v. Employers Ins. of Wausau*, 981 F. Supp. 467, 474 (S.D. Tex. 1997) ("[M]any, if not all, of Plaintiff's causes of action depend upon an ultimate finding that Plaintiff should not have been denied coverage by Defendant under the workers' compensation scheme."); *Hamilton v. Sanofi-Aventis U.S., Inc.*, 628 F. Supp. 2d 59, 62 (D.D.C. 2009); *Yampey v. Glazer Foods Co.*, No. H-05-4348, 2006 U.S. Dist. LEXIS 67939, at *1-4 (S.D. Tex. Sept. 21, 2006); *Bray v. Utica Mutual Ins. Co.*, No. 3:98-CV-0544, 1998 U.S. Dist. LEXIS 13799, at *3-7 (N.D. Tex. Aug. 26, 1998). Accordingly, deference to the Bureau's rulings is proper because they will dispose of Plaintiffs' eligibility for compensation, which is an essential predicate of their RICO claims. *See Reedy v. White Consol. Indus.*,

503 N.W.2d 601, 603 (Iowa 1993) (application of primary jurisdiction doctrine was appropriate where decision by workers' compensation regulator would "carry preclusive effect").

Second, Plaintiffs' suit presents technical questions that the Bureau is best able to decide. The crux of their claims is that Defendants used a physician to conduct fraudulent independent medical examinations to justify denial of benefits. Review of these IMEs present technical medical questions, the resolution of which is at the core of the Bureau's expertise. *See Moon*, 375 F. Supp. 2d at 587 (suits such as these raise complex medical issues that the Michigan legislature committed to "the expertise and specialized knowledge" of the Bureau's magistrates").

Third, fraud in particular is best left to the detection of the administrative agency when it allegedly occurs in relation to technical matters within the agency's expertise. *See Fellers v. Atl. Mut. Ins. Co.*, No. 3:01-CV-1546-G, 2001 U.S. Dist. LEXIS 20112, at *7-10 (N.D. Tex. Dec. 4, 2001) (primary jurisdiction doctrine applied to bad faith and deceptive practices claims directed at denial of workers' compensation benefits); *Northwinds Abatement*, 69 F.3d at 1311 (primary jurisdiction applied to allegations that insurers paid fraudulent workers' compensation claims).

Finally, the considerations of uniformity and respect for Michigan's important state policies that justify *Burford* abstention also counsel deference to the Bureau's primary jurisdiction. *See W. Pac. R.R. Co.*, 352 U.S. at 64.

## IV.    PLAINTIFFS' RICO CLAIMS ARE NOT RIPE UNTIL THE BUREAU DECIDES THEIR ELIGIBILITY FOR BENEFITS

Plaintiffs' RICO claims are not ripe for decision because the Bureau's magistrates, the WCAC, and the Michigan courts have yet to determine their eligibility for benefits, without which they cannot maintain this suit.  A case is not ripe where the plaintiff's injury or an essential element of his claim depends on further administrative decision-making, particularly where that decision-making may obviate the need for relief.  *See Walsh v. Donovan,* 575 F. Supp. 303, 305 (S.D.N.Y. 1983) (federal court claim for workers' compensation benefits was not ripe because "[p]laintiff's application for federal workers' compensation benefits is currently pending before . . . the Department of Labor."); *see also Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003); *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726 (1998); *Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351, 1363 (6th Cir. 1995).

The Bureau may issue several different decisions that would deprive Plaintiffs of their claims.  If the Bureau decides that they are not eligible for benefits, they have suffered no injury that can form the basis of a RICO suit.

- 29 -

Conversely, if the Bureau determines that plaintiffs are eligible for benefits and

makes an award of compensation, then they will get the full relief to which they

are entitled.  Moreover, if the Bureau finds that Defendants did not commit fraud

in the handling of Plaintiffs' claims, that decision may be entitled to preclusive

effect or deference under the *Rooker-Feldman* doctrine.  *See Hogg's v. New Jersey*,

352 F. App'x 625 (3d Cir. 2009) (applying *Rooker-Feldman* in the context of a

workers' compensation appeal).[1]

### CONCLUSION

For the foregoing reasons, the District Court's judgment should be affirmed.

Respectfully submitted,

/s/ Mark F. Horning
Mark F. Horning
Jeffrey M. Theodore
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 429-3000

*Attorneys for Amici Curiae*

---

[1] Plaintiffs' speculation that there will be settlements of their WDCA claims, Br. Appellants at 49-50, does not make their RICO claims ripe for decision.  If settlements are not reached, then their claims will still depend on the Bureau's future decisions regarding their eligibility for compensation.  If the parties do reach settlement, Plaintiffs' RICO claims might be released or they might obtain all of the compensation to which they are entitled.

- 30 -

Bruce C. Wood
AMERICAN INSURANCE
    ASSOCIATION
2101 L Street N. W.
Washington. D.C. 20037

*Attorney for Amicus Curiae the*
*American Insurance Association*

Robin S. Conrad
Shane B. Kawka
NATIONAL CHAMBER
    LITIGATION CENTER, INC.
1615 H Street, N.W.
Washington, D.C.  20062
(202) 463-5537

*Attorneys for Amicus Curiae*
*Chamber of Commerce of the United*
*States of America*

- 31 -

Case: 10-1453   Document: 006110760814   Filed: 09/20/2010   Page: 44

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,669 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in Times New Roman 14 point.

      /s/      
Mark F. Horning

## CERTIFICATE OF SERVICE

I certify that on September 20, 2010, I served the Brief of *Amici Curiae* the

American Insurance Association, National Council Of Self-Insurers, and Chamber

of Commerce of the United States of America in Support of Defendants-Appellees

by electronic case filing on the following:

Office of the Clerk
United States Court of Appeals for the Sixth Circuit
540 Potter Stewart U.S.Courthouse
100 E. Fifth Street
Cincinnati, Ohio 45202-3988

Matthew F. Leitman
Thomas W. Cranmer
Paul D. Hudson
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
840 West Long Lake Road
Troy, Michigan 48098-6358

Daniel B. Tukel
BUTZEL LONG
150 W. Jefferson Ave., Suite 100
Detroit,MI 48226

Michael F. Smith
THE SMITH APPELLATE LAW FIRM
1747 Pennsylvania Ave. NW, Suite 300
Washington, DC 20006

Harvey R. Heller
Kathleen Helen Klaus
Maddin, Hauser, Wartell, Roth & Heller
28400 Northwestern Highway
Third Floor Essex Centre
Southfield, MI 48034

- 34 -

Marshall Lasser
MARSHALL LASSER PC
20100 Civic Center Drive
Suite 309, P.O. Box 2579
Southfield MI 48037

/s/

Mark F. Horning
